IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JESSE SUAREZ | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:15-CV-00105-RP |
| | § | |
| UNITED PARCEL SERVICE, INC. (OHIO) | § | |
| | § | |
| | § | |
| *Defendant.* | § | |

---

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

## TABLE OF CONTENTS

I.   Introduction and Summary of Argument ............................................................. 1

II.  Statement of Undisputed Material Facts ........................................................... 2

III. Argument & Authorities ................................................................................... 2

   A.  DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S DISCRIMINATION
       AND RETALIATION CLAIMS UNDER 38 U.S.C. § 4311 OF USERRA ..................................... 2

      1.  Suarez Fails to Prove by a Preponderance of the Evidence that His
         Military Service Was a Motivating Factor In His Termination ...................................... 3

         a.  Suarez Cannot Show Temporal Proximity Between His Military
            Service and His Termination ...................................................................... 5

         b.  Suarez Cannot Show UPS Expressed Hostility Toward Service Members ................ 6

         c.  Suarez Cannot Show that Employees With Similar Work Records or
            Offenses were Treated Differently Than Himself ......................................... 9

         d.  Suarez Cannot Show Inconsistencies Between UPS's Proffered
            Reason for his Termination and UPS's Actions Toward Suarez ............................... 10

      2.  Summary Judgment is Proper Because UPS Would Have Taken the
         Same Action In the Absence of Suarez's Military Service ........................................... 12

   B.  DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S
       HOSTILE WORK ENVIRONMENT CLAIM ................................................................ 15

      1.  Suarez Fails to Show that a Hostile Work Environment Claim under
         USERRA Existed At the Time of His Termination ....................................................... 15

      2.  Even if Cognizable, Suarez Fails to Demonstrate He Was Subjected to a
         Hostile Work Environment ............................................................................. 16

IV.  Conclusion and Prayer for Relief ..................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Alfred v. La. Dept. of Corr.*,
   619 F. App'x 324 (5th Cir. 2015)……………………………………………………...11

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)………………………………………………………………… 6

*Armstrong v. Boehringer Ingelheim Pharm., Inc.*,
   No. 3:08-CV-1458-O, 2010 WL 2540751  (N.D. Tex. June 21, 2010)………………………11

*Bennett v. Dallas Indep. Sch. Dist.*,
   936 F. Supp.2d 767 (N.D. Tex. 2013)………………………………………………… 9

*Bradberry v. Jefferson Cty., Tex.*,
   732 F.3d 540 (5th Cir. 2013)………………………………………………………………11

*Burlington N. & Santa Fe Ry. Co. v. White*,
   548 U.S. 53 (2006)……………………………………………………………………….. 5

*Campbell v. England*,
   234 F. App'x 183 (5th Cir. 2007)……………………………………………………… 6

*Carder v. Cont'l Airlines, Inc.*,
   636 F.3d 172 (5th Cir. 2011)………………………………………………………… 16

*Chance v. Dallas County Hospital District*,
   176 F.3d 294 (5th Cir. 1999)…………………………………………………… 6, 7, 8, 13

*Clark Cty. School. Dist. v. Breeden*,
   532 U.S. 268 (2001)…………………………………………………………………… 5

*Cooper v. Wal-Mart Transp., LLC*,
   662 F. Supp. 2d 757 (S.D. Tex. 2009)………………………………………………… 6

*Denson v. Meadwestvaco Corp.*,
   No. CIV.A. 3:04-CV-337-M, 2005 WL 2179116 (N.D. Tex. Sept. 8, 2005)…………………12

*E.E.O.C. v. Boh Bros. Const. Co.*,
   731 F.3d 444 (5th Cir. 2013)………………………………………………………… 17

*Erickson v. U.S. Postal Serv.*,
   571 F.3d 1364 (Fed. Cir. 2009)……………………………………………………... 4

*Faragher v. City of Boca Raton*,
   524 U.S. 775 (1998)………………………………………………………………16, 17

*Greene v. United States*,
   376 U.S. 149 (1964)………………………………………………………………… 16

*Hance v. BNSF Ry. Co.*,
   645 F. App'x 356 (6th Cir. 2016)……………………………………………………...15

*Hill v. Michelin N. Am., Inc.*,
   252 F.3d 307 (4th Cir. 2001)……………………………………………………… 15

*Jackson v. Cal-W. Packaging Corp.*,
    602 F.3d 374 (5th Cir. 2010)………………………………………………………… 11

*Jones v. Dallas Cty.*,
    47 F. Supp. 3d 469 (N.D. Tex. 2014) ………………………………………………... 18

*Landolfi v. City of Melbourne, Fla.*,
    515 F. App'x 832 (11th Cir. 2013)………………………………………………………… 10

*Mayeaux v. Houston Indep. Sch. Dist.*,
    986 F. Supp. 2d 842 (S.D. Tex. 2014)……………………………………………… 4

*Price Waterhouse v. Hopkins*,
    490 U.S. 228 (1989))………………………………………………………………… 13

*Rademacher v. HBE Corp.*,
    645 F.3d 1005 (8th Cir. 2011)………………………………………………………... 9, 10

*Ray v. Henderson*,
    217 F.3d 1234 (9th Cir. 2000)…………………………………………………………5

*Reine v. Honeywell Int'l Inc.*,
    362 F. App'x 395 (5th Cir. 2010)……………………………………………………...17

*Robinson v. Morris Moore Chevrolet-Buick, Inc.*,
    974 F. Supp. 571 (E.D. Tex. 1997)……………………………………………………… 3

*Sheehan v. Dep't of Navy*,
    240 F.3d 1009 (Fed. Cir. 2001)………………………………………………………3, 4

*Smith v. Home Depot U.S.A., Inc.*,
    102 F. Supp. 3d 867 (E.D. La. 2015)………………………………………………18

## Statutes

20 C.F.R. § 1002.22 ……………………………………………………………………… 6, 16

38 U.S. §§ 4301 to 4335 …………………………………………………………………… 4, 5

38 U.S.C § 4311(a) ……………………………………………………………………………5

38 U.S.C. § 4311 ………………………………………………………………………………5

38 U.S.C. § 4311(b) …………………………………………………………………………5

38 U.S.C. § 4311(c)(1)-(2)…………………………………………………………………6

## Rules

Rule CV-7(d)(1)………………………………………………………………………………2

Federal Rules of Civil Procedure
    Rule 50(a)………………………………………………………………………………9

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JESSE SUAREZ | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:15-CV-00105-RP |
| | § | |
| UNITED   PARCEL   SERVICE,   INC. | § | |
| (OHIO) | § | |
| | § | |
| *Defendant.* | § | |

---

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

For its Motion for Summary Judgment, Defendant United Parcel Service, Inc. (Ohio) ("UPS") respectfully shows the following:

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Jesse Suarez is no longer employed as an Account Executive for UPS solely because of his own wrongdoing.  After being counseled numerous times about his deficient documentation, he was discharged in September 2011 when UPS concluded that he had falsified his activity and expense reports to UPS.  While Suarez claims he was treated adversely and harassed based on his service in the U.S. Navy Reserve, in violation of the Uniformed Service Employment and Reemployment Act, 38 U.S. §§ 4301 to 4335 ("USERRA"), there is no evidence to support his claims.

Specifically, Suarez's discrimination and retaliation claims fail because (1) Suarez cannot show that his military service was a motivating factor in his termination, and (2) even if it were a motivating factor, UPS would have taken the same action against Suarez, even if he had not been

1

a member of the U.S. Navy Reserve.  Likewise, Suarez's hostile work environment claim fails on the grounds that such a claim did not exist at the time of his termination, and, even if it did, Suarez has not pled facts showing the "harassment" was severe or pervasive enough to rise to the level of a hostile work environment.  As a result, no genuine issue of material fact exists on any of Suarez's claims in this case, and summary judgment in favor of UPS must be granted.

## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Rule CV-7(d)(1), Defendant UPS attaches its Statement of Undisputed Material Facts as Appendix A to this Motion.

## III.   ARGUMENT & AUTHORITIES

### A.   DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S DISCRIMINATION AND RETALIATION CLAIMS UNDER 38 U.S.C. § 4311 OF USERRA

The Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4301 *et seq.* ("USERRA") provides that a "person who is a member or . . . who has an obligation to perform service in an uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership . . . or obligation."  38 U.S.C § 4311(a).  In addition to prohibiting discrimination on the basis of an employee's membership in the armed services, the statute also prohibits employers from taking any adverse action against any employee who "(1) has taken an action to enforce a protection afforded any person under this chapter, (2) has testified or otherwise made a statement in or in connection with any proceeding under this chapter, (3) has assisted or otherwise participated in an investigation under this chapter, or (4) has exercised a right provided for in this chapter."  38 U.S.C. § 4311(b).

With respect to both USERRA's discrimination and retaliation provisions, an employer violates USERRA if the employee's military service or enforcement of USERRA is a "***motivating***

2

*factor* in the employer's action, **unless** the employer can prove that the action would have been taken in the absence of such membership" or "such person's exercise of a right." 38 U.S.C. § 4311(c)(1)-(2) (emphasis added). USERRA, thus, establishes a burden-shifting framework, in which the employee bears the initial burden of proving "by a preponderance of the evidence that his protected status was a motivating factor in the adverse employment action." *Robinson v. Morris Moore Chevrolet-Buick, Inc.*, 974 F. Supp. 571, 575-76 (E.D. Tex. 1997); *see also* 20 C.F.R. § 1002.22 ("The individual has the burden of proving that a status or activity protected by USERRA was one of the reasons that the employer took action against him or her, in order to establish that the action was discrimination or retaliation in violation of USERRA."). If the plaintiff meets this burden of proof, an employer may still avoid liability if it can prove that "that legitimate reasons, standing alone, would have induced the employer to take the same adverse action." *Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1014 (Fed. Cir. 2001); *see also* 20 C.F.R. § 1002.22 ("If the individual succeeds in proving that the status or activity protected by USERRA was one of the reasons the employer took action against him or her, the employer has the burden to prove the affirmative defense that it would have taken the action anyway.").

1.   **Suarez Fails to Prove by a Preponderance of the Evidence that His Military Service Was a Motivating Factor In His Termination**

Although "motivating factor" is not defined in USERRA, courts have clarified that a plaintiff bears the initial burden of proving by a preponderance of the evidence that "'the employer relied on, took into account, considered, or conditioned its decision on the employee's military-related absence or obligation.'" *Mayeaux v. Houston Indep. Sch. Dist.*, 986 F. Supp. 2d 842, 847 (S.D. Tex. 2014) (quoting *Erickson v. U.S. Postal. Serv.*, 571 F.3d 1364, 1368 (Fed. Cir. 2009)). Though the Fifth Circuit has not yet analyzed USERRA's "motivating factor" standard in depth,

other Circuits[1] have identified a non-exclusive list of factors courts may consider: (1) proximity in time between the employee's military activity and the adverse employment action; (2) expressed hostility toward service members with knowledge of the employee's military activity; (3) disparate treatment of employees with similar work records or offenses who are not service members; and (4) inconsistencies between the proffered reason and other actions of the employer.  *See e.g.*, *Sheehan*, 240 F.3d at 1014.  None of these factors weigh in Suarez's favor.

In this case, Suarez has identified ***only two*** incidents that led him to believe he was discriminated or retaliated against on the basis of his military leave: (1) Ransonette's alleged remark to Suarez about how his two-week absence during his February 2011 Navy Reserve training would allow competitors to "cannibalize" his territory; and (2) Bird's April 2011 email, in which she reminded Suarez that, just as UPS supported his military leave, he needed to focus on his territory when he returned.  Ex. 6, Suarez Dep. 139:2-140:7; 141:5-11; 141:20-142:3; 142:16-143:12; 144:2-8; *see also* Ex. 24, April 19, 2011 Em frm Bird to Suarez.  These isolated incidents, however, do not create a genuine issue of material fact that UPS relied upon, considered, or took into account his military service when it terminated his employment for falsifying his activity and expense reports.[2]

---

[1] *See e.g.*, *Dees v. Hyundai Motor Mfg. Alabama, LLC*, 368 F. App'x 49, 51 (11th Cir. 2010); *Rademacher v. HBE Corp.*, 645 F.3d 1005, 1010–11 (8th Cir. 2011); *W.F. Bolin Co. v. N.L.R.B.*, 70 F.3d 863, 871 (6th Cir. 1995) (same in the context of NLRA).

[2] Though Suarez identifies a total of five adverse employment acts at issue in this case, Ex. 53, Pl's Ans. To D's Interrogatories, No. 11, neither his daily reports nor his self-authored reprimands rise to the level of constituting adverse employment actions.  *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68, 126 (2006) (holding that "adverse employment action" requires proof that "a reasonable employee would have found the challenged action ***materially adverse***" (emphasis added)).  Similarly, Suarez's allegation that he was not allowed "reasonable time to transition to his new position" is too vague to constitute an adverse employment action and appears to be merely an extension of his termination claim.  Thus, the only potential adverse employment actions Suarez has identified supporting his claims concern his reduction in pay and his termination.

With regard to Suarez's alleged reduction in pay, Suarez acknowledges that UPS policy is to immediately address any overpayment or underpayment made to employees and that the alleged reduction in pay occurred just after the first month of his promotion.  Ex. 6, Suarez Dep. 168:18-169:3,164:5-8.  Suarez further acknowledges that when he inquired about the reason for the reduction, he was allegedly told by a James Eshelman that an accounting error led to an overpayment of multiple employees.  Ex. 6, Suarez Dep. 167:12-168:7.  Suarez does not proffer any evidence

a.      **Suarez Cannot Show Temporal Proximity Between His Military Service and His Termination**

The undisputed facts show Suarez went on two U.S. Navy Reserve trainings during his time as an AE, one from February 6, 2011 to February 18, 2011, and one from April 22, 2011 to May 8, 2011.  Ex. 12, February 1, 2011 Em frm Ewell to Bird; Ex. 23, April 18, 2011 Em frm LeDeaux to Bird.  These short military leaves occurred four and a half months or more prior to his September 23, 2011 termination.  This lengthy gap in time does not support a causal link in this case.

Though temporal proximity between events can be enough, in some circumstances, to meet the motivating factor requirement for the purposes of summary judgment, courts have made clear that "the temporal proximity must be very close."  *Clark Cty. School. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)[3] (citing with approval decisions holding that three- and four-month gaps between protected activity and alleged retaliation are not sufficiently close).  Indeed, in the Fifth Circuit, a gap of more than four months is unlikely to satisfy a *prima facie* case of discrimination or retaliation.  *See Campbell v. England*, 234 F. App'x 183, 188 (5th Cir. 2007) ("[I]t is not clear that a five-or six-month time lapse would be sufficient to draw such an inference, as this circuit has

that the individuals with whom he communicated exists, let alone knew of his military service.  *See* Ex. 1, Wilfred Decl. ¶ 8; Ex. 10, Bird Decl. ¶ 9.   More importantly, Suarez cannot show that any of his supervisors who made the decision to terminate his employment were even aware of the alleged reduction, let alone involved in it.  Ex. 10, Bird Decl. ¶ 9.  Suarez further admits that he has no knowledge beyond his own speculation that his military service played any role in the reduction.  Ex. 6, Suarez Dep. 167:12-168:7.  Thus, while a reduction in pay ordinarily constitutes an adverse employment action for the purposes of summary judgment, because the undisputed evidence shows that the accounting error affected multiple employees, it does not rise to the level of an adverse employment action without at least some evidence that Suarez was singled out in some way.  *See Ray v. Henderson*, 217 F.3d 1234, 1244 (9th Cir. 2000) (holding plaintiff had demonstrated a genuine issue of material fact that his reduction in pay constituted an adverse employment action where his pay was ***disproportionately*** reduced during an "across-the-board cuts").  As a result, the only adverse employment action at issue in this Motion is Suarez's termination.

[3] Though the cases discussed in this section analyze temporal proximity in other contexts, the United States Supreme Court has recognized that "[USERRA] is very similar to Title VII, which prohibits employment discrimination 'because of ... race, color, religion, sex, or national origin' and states that such discrimination is established when one of those factors 'was a motivating factor for any employment practice, even though other factors also motivated the practice.'" *Staub v. Proctor Hosp.*, 562 U.S. 411, 417 (2011).  Thus, UPS treats these cases as persuasive authority in the USERRA context.

only allowed lapses of up to four months to go to the jury as evidence of pretext . . . ."); *Cooper v. Wal-Mart Transp., LLC*, 662 F. Supp. 2d 757, 777–78 (S.D. Tex. 2009) ("[Plaintiff] filed his charge with the TWC and EEOC on May 1, 2007. He was fired on September 20, 2007, four and one-half months later. Cooper has identified no case in which a period of longer than four months has been found to establish a causal link). Like in *Cooper*, Suarez was also terminated four and a half months following his second two week military leave, which is not close enough in time to demonstrate a causal link.

### b.     Suarez Cannot Show UPS Expressed Hostility Toward Service Members

Neither Ransonette's alleged off-hand remark nor Bird's email characterizing Suarez's military leave as "voluntary" and discussing his lack of focus rises to the level of "expressing hostility" toward service-members. Thus, Suarez cannot rely exclusively on these communications in his attempt to show his military service was a motivating factor in his termination. The Fifth Court's decision in *Chance v. Dallas County Hospital District*, 176 F.3d 294, 295 (5th Cir. 1999), affirming a district court's decision to reject a jury verdict under USERRA and grant defendant's judgment as a matter of law is instructive.[4]  *Id.*

In *Chance*, the district court held that plaintiff failed as a matter of law to meet his burden of showing that his military service was a motivating factor in his termination, even though plaintiff's supervisors had (1) acknowledged that the plaintiff's absence "created a hardship" on the other employees and held a meeting "to discuss the situation"; (2) asked the plaintiff "how often he might be called for military reserve duty on short notice"; and (3) called the Naval Air

---

[4] Though *Chance* addresses a motion for judgment as a matter of law, the United States Supreme Court has recognized that the standard for a motion for summary judgment "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Thus, despite procedural differences, "the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251

Station twice to verify the legitimacy of plaintiff's orders.  *Chance*,  1998 WL 177963, at *1.  The Court found that the "only reasonable inference . . . [from the evidence] [wa]s that the hospital was legitimately concerned about the needs of the purchasing department while plaintiff was on leave" and that neither the meeting discussing plaintiff's leave nor the defendant asking plaintiff how often he would be called away on leave on short notice rose to the level of "hostility" as contemplated under USERRA because the plaintiff had not presented any evidence that such "staffing considerations" were tied in any way to the "adverse employment decision" about which he complained.  *Id.* at *4.  Finally, because Plaintiff's assertion that his supervisors acted "cold" toward him after he returned from military leave was too vague and unsubstantiated a consideration to establish a USERRA violation, the Court held the motivating factor had not been met as a matter of law.  *Id.* at *5.

While the Court acknowledged that the supervisor's second phone call to the Naval Air Station could, in some circumstances, be viewed as evidence of hostility, the Court dismissed this because the call was made by a non-decision making supervisor of his own volition.  *Id.*  The fact that the same supervisor testified he was "resentful" of plaintiff taking military leave was, likewise, of no moment for the same reasons because "[h]is feelings . . . are irrelevant and do not constitute evidence of improper motivation."  *Id.*  Ultimately, though the plaintiff in *Chance* was discharged fewer than two weeks after his return from service, the Court held that the "[w]hatever causal link could otherwise be inferred by the proximity in time between these two events was completely undermined by th[e] intervening incident" of Plaintiff's angry and abusive altercation with his supervisor, which clearly violated defendant's policies and warranted termination.  *Chance*, 1998 WL 177963, at *5.

7

Like the plaintiff in *Chance*, Suarez's only evidence that his military service played any role in UPS's decisions are two offhand remarks about Suarez's absences from his territory, neither of which rises to the level of expressing hostility toward service members.  Like the supervisors in *Chance*, Ransonette's alleged statement about Suarez's absence was reasonable, given that he was the only AE in his territory and needed to make arrangements to have his area covered during his absence.  Furthermore, Ransonette was not Suarez's supervisor and played no role whatsoever in the investigation that led to Suarez's termination or UPS's decision to terminate Suarez.  Ex. 10, Bird Decl. ¶¶ 23-25.  Thus, like the supervisor in *Chance* who testified that he was "resentful" of plaintiff's taking military leave, Ransonette's feelings, to the extent deemed unsupportive in any way, "are irrelevant and do not constitute evidence of improper motive."   *Chance*, 1998 WL 177963, at *5.[5]

Similarly, nothing in Bird's email rises to the level of expressing "hostility" toward service members.  Ex. 24, April 19, 2011 Em frm Bird to Suarez.  To the extent Bird's email evinces any frustration at all, the context of the email concerned whether Bird would approve Suarez's ***second*** demand in a couple of months' time to advance ***two weeks*** of ***unaccrued*** vacation pay, not whether UPS supported Suarez in his military service.[6]  Ex. 54, Bird Dep. 153:14-25; 166:6-169:20.  Far from expressing hostility toward his service, Bird's email simply makes clear that while she was not required to accommodate his use of additional unaccrued vacation pay at that juncture, she was

---

[5] The same is true of Ewell's January email, in which she mentions Suarez's failure to provide her with a copy of his military orders confirming his training, despite his promise to do so.  While Ewell mentions the incident in her lengthy memo to Bird documenting her concerns with Suarez, she explains that the reason she included it in her memorandum to Bird was to inform her that Suarez would be out on leave and to provide Bird with another example of Suarez not following through as promised.  Ex. 11, Ewell Decl. ¶ 6.  Like Ransonette's comment, Ewell's memo does not rise to the level of expressing hostility toward Suarez's military service, and, even if it did, would be irrelevant because Ewell played no role whatsoever in the investigation that led to Suarez's termination or the termination decision itself.  *Id.* at ¶ 3.

[6] Importantly, advancing unaccrued vacation time is not required under USERRA or UPS policy, and advancing two weeks of such leave at one time is considered an extraordinary request.  Ex. 10, Bird Decl., ¶¶ 6, 12.

8

willing to do so.  She, however, wanted Suarez to know he was choosing to use up his vacation pay for the entire year.  Finally, Bird's reference to Suarez's focus on his UPS territory is not probative because her comments were not directed solely to Suarez's military leave, but also his out-of-territory UPS training and his relocation.  More importantly, like in *Chance*, there is no evidence that Suarez was terminated for excessive absences from his territory or for any potential proxy thereof (e.g., low sales numbers).  Instead, Suarez was terminated because of the discrepancies UPS observed and verified in his reports.  Thus, neither Ransonette's remark nor Bird's email raises a genuine issue of material fact that Suarez's military service was a motivating factor in UPS's decision to terminate his employment.  *See Rademacher v. HBE Corp.*, 645 F.3d 1005, 1010-11 (8th Cir. 2011) (holding that decisionmaker's anger that plaintiff had enlisted, concern that plaintiff's leave would "inconvenience him," and statement that "he expected his pilots to be available 24/7" did not rise to the level of expressing hostility toward plaintiff's military service membership where he arranged for replacements during absences, reinstated plaintiff upon his return, and made "no further derogatory comments about plaintiff's military service"); *Bennett v. Dallas Indep. Sch. Dist.*, 936 F. Supp. 2d 767, 788–89 (N.D. Tex. 2013) (holding plaintiff failed to demonstrate motivating factor where he "merely refer[red] to the same general evidence that he endured biased statements, resentment, and disparate treatment," and could only point to one direct statement in an email that plaintiff had "'tried to slam [defendant]' with his USERRA grievance").

**c.    Suarez Cannot Show that Employees With Similar Work Records or Offenses were Treated Differently Than Himself**

The comparator evidence in this case demonstrates Suarez was treated the same as other AEs who committed the same offense.  *See* Ex. 10, Bird Decl. ¶ 4.  Bird terminated Account Executive Jason James in August 2010, just a few months before Suarez began working in Shreveport, after her review of his TEAMS reports revealed the same kind of discrepancies later

9

observed in Suarez's records. *Id.* at ¶ 14. Just as with Suarez, Bird counseled James on the discrepancies and confirmed that he understood that any additional discrepancies would result in his termination. *Id.* Similarly, UPS placed phone calls to customers James reported visiting in person, which confirmed that James had not made the reported visits. *Id.* When faced with indications of falsification, Bird obtained authority to terminate James. Unlike Suarez, James was not a member of the military. *Id.* Consequently, the evidence in this case shows Bird, pursuant to UPS's strict honesty and integrity policies, recommended the same punishment for the same misconduct, irrespective of military status. Thus, Suarez cannot meet the motivating factor standard by showing others with similar records were treated differently.

### d. Suarez Cannot Show Inconsistencies Between UPS's Proffered Reason for his Termination and UPS's Actions Toward Suarez

Though an employer's "shifting reasons" for an adverse employment action may, in some circumstances, show that his or her military service was a motivating factor, *Landolfi v. City of Melbourne, Fla.*, 515 F. App'x 832, 835 (11th Cir. 2013), Suarez fails to demonstrate any inconsistencies in UPS's proffered reasons for his termination: its reasonable belief that Suarez falsified his TEAMS and ORACLE entries. UPS has never indicated that Suarez was terminated for any reason other than his falsification of records. *See Rademacher v. HBE Corp.*, 645 F.3d 1005, 1011-12 (8th Cr. 2011) (holding plaintiff had not shown inconsistencies sufficient to meet the motivating factor standard where defendant's stated reasons for plaintiff's termination never changed and coded document produced by defendant's third party administrator reflecting discharge for a different reason were "promptly corrected").

While Suarez attempts to show that UPS's investigation into his conduct contained errors that suggest a different motive behind its decision to terminate his employment, each of those "errors" actually further supports UPS's position that it reasonably believed Suarez was falsifying

his TEAMS and/or ORACLE records.[7]   Furthermore, the case law is clear that even if UPS was

wrong in its determination that Suarez falsified his records, that does not demonstrate UPS was

motivated by Suarez's military service.  *See Bradberry v. Jefferson Cty., Tex.* 732 F.3d 540, 551

(5th Cir. 2013) ("USERRA does not exempt those in the military from complying with the usual

rules of behavior in the workplace or being subject to the usual discipline.  That discipline can

include discharge that ***will not be affected, as [plaintiff]'s was not, by a . . . later determination

that the stated grounds were not proven***.") (emphasis added)); *Alfred v. La. Dept. of Corr.*, 619

F. App'x 324, 326-37 (5th Cir. 2015) ("If [plaintiff] is challenging the document-falsification

justification as pretext because he disagrees that he falsified records, his claim fails because he is

disputing the accuracy of his employer's belief, not its genuineness. . . . Our anti-discrimination

laws do not require an employer to make proper decisions, only non-retaliatory ones." (internal

citations omitted)); *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010)

("[Plaintiff] has presented no evidence as to why the company's reliance on the evidence against

him was in bad faith.  His own conclusory assertion that he did not behave inappropriately is

irrelevant, since he has provided no evidence to suggest that [defendant's] decision to trust the

results of the two investigations, rather than his self-serving denial of wrongdoing, was

unreasonable or in bad faith."); *Armstrong v. Boehringer Ingelheim Pharm., Inc.*, No. 3:08-CV-

1458-O, 2010 WL 2540751, at *7 (N.D. Tex. June 21, 2010) ("Further, whether Plaintiff actually

forged signatures related to her Texoma Neurology visit or not, she has not shown Defendant did

not believe, in good faith, this was the reason for their action . . . .  Plaintiff's bald, self-serving

denial of wrongdoing does not suffice to rebut Defendant's belief.  As such, Plaintiff has not shown

---

[7] Not only were the alleged "mistakes" made by individuals other than Bird, who is the target of Suarez's discrimination allegations, but the "mistakes" he identifies are the result of Suarez himself not properly listing the customer in his entries.  *See* Ex. 30, LeDeaux Decl. ¶ 4; Ex. 66, Southers Dep. 344:2-19, 382:3-384:7;  Ex. 10, Bird Decl. ¶ 22 and accompanying Appendix B for examples of the kind of "mistakes" to which Suarez refers.

these reasons are false or unworthy of credence." (internal citations omitted)); *Denson v. Meadwestvaco Corp.*, No. CIV.A. 3:04-CV-337-M, 2005 WL 2179116, at \*4 (N.D. Tex. Sept. 8, 2005) ("Further, it is not sufficient for the plaintiff to present evidence that the investigation was imperfect, incomplete, or that it potentially reached an erroneous conclusion.  A plaintiff must show that the defendant did not reasonably believe the sexual harassment claim and that discrimination was the real reason for the termination. By refusing to second-guess the results of an imperfect investigation, courts encourage employers to investigate complaints against at-will employees before deciding whether or not to discharge them." (internal citations omitted)).

In the present case, Bird and Human Resources relied upon the information provided by security and administrative assistant Corina Southers.  Even if Plaintiff can demonstrate some of the examples of falsification are flawed, Suarez cannot explain all of the discrepancies his supervisors observed in his reports.  *See* Ex. 10, Bird Decl. ¶¶ 22-23.  More importantly, even if he could, there is absolutely no evidence that demonstrates the decision-makers (Bird and Human Resources) did not genuinely and reasonably believe Suarez falsified his TEAMS and ORACLE records, based on the evidence they reviewed.  *Id.*; Ex. 30, LeDeaux Decl. ¶ 6.

### 2.    Summary Judgment is Proper Because UPS Would Have Taken the Same Action In the Absence of Suarez's Military Service

Though Suarez fails to show that his military service was a motivating factor in his termination, even if he were able to do so, UPS would still be entitled to summary judgment on his claims because the inconsistencies in Suarez's records, "standing alone," would have induced UPS to terminate his employment irrespective of Suarez's military status.  *See* 20 C.F.R. § 1002.22 ("If the individual succeeds in proving that the status or activity protected by USERRA was one of the reasons the employer took action against him or her, the employer has the burden to prove

the affirmative defense that it would have taken the action anyway."); *Chance*, 1998 WL 177963,

at *3 (same) (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 241-42 (1989)).

The undisputed evidence shows that UPS maintains strict honesty in employment policies,

which require supervisors to provide "careful consideration" to the approval of expense reports

and warn employees that any dishonesty "will result in immediate dismissal." *See* Ex. 5, Honesty

in Employment; *see also* Ex. 3, UPS Code of Business Conduct; Ex. 2, UPS Policy Book.

Consistent with these policies, Bird asked LeDeaux to review Suarez's TEAMS and ORACLE

reports after her review of his expense report revealed that he claimed mileage on a day Bird knew

he had made no in-person visits.  Ex. 25, July 5, 2011 Em frm Bird to LeDeaux.  Once the

investigation into Suarez's activities for that month demonstrated numerous inconsistencies, Bird

instructed her to conduct a similar analysis of his April and May reports.  *Id.*  Ultimately, UPS's

investigation showed that, between April 2011 and August 2011 (1) Suarez claimed mileage for

at least **twenty-three** customers that he did not record visiting in-person[8]; (2) Suarez reported

more in-person time than his entries justified[9]; and (3) Suarez inflated his mileage reimbursement

requests.[10]  While this evidence alone would have been enough to terminate Suarez, in light of the

clear instruction he had received about accurately and completely reporting his activities and

mileage, *see* Ex. 32, July 21, 2011 Stmt. of Understanding, Bird additionally instructed Southers

to contact customers listed in Suarez's most recent August TEAMS entries to verify that he made

the visits in question.  Of the customers she contacted, nine confirmed either that no one from UPS

---

[8] *See* Ex. 10, Bird Decl. ¶ 22.  On at least five of the days in question (April 5, 2011, April 13, 2011, May 25, 2011, May 27, 2011, and June 21, 2011) Suarez claimed mileage while listing *no in-person visits whatsoever*.  *Id.*

[9] Suarez's comments on the visits he did report often did not correspond with the time he claimed to have been in front of the customer or indeed indicate an in-person visit was made at all.  See Ex 10, Bird Decl. ¶ 22.

[10] Security reported that on five of the nine days they calculated, Suarez's claimed more than twenty miles more than what Mapquest estimated the mileage should have been.  Ex. 48, September 21, 2011 Em frm Bird to Bolin & Edwards.

had visited their businesses, or that Suarez logged more in-person time than the customer's report justified.[11]  Ex. 49, Sept. 21, 2011 Em frm Bird to Deerhake & Mansfield, at 003203.

Based on all of this evidence—gathered by multiple individuals—UPS reasonably concluded that Suarez was inflating and falsifying his mileage and activity records. Ex. 10, Bird Decl. ¶ 23; Ex. 30, LeDeaux Decl. ¶ 6.  Furthermore, the comparator evidence demonstrates Bird has terminated other non-military AEs under nearly identical circumstances.  Prior to Suarez's termination, Bird had already terminated the employment of three AEs whom she discovered falsifying records in the same way as Suarez:  Robby Gray, Carson Petree, and Jason James.  Ex. 10, Bird Del., ¶ 4.  Post Suarez's employment, Bird has continued enforcing UPS's honesty policies against AEs for falsifying their TEAMS and ORACLE records: Elvis Coombs and Kevin Saar.  *Id.*  None of these individuals has ever served in the armed forces, as far as Bird is aware. Thus, even if Suarez is able to demonstrate a genuine issue of material fact that his military service was a motivating factor in his termination, which UPS denies, summary judgment is still proper because UPS's investigation and demonstrated history of termination under similar circumstances shows UPS would have taken the same action anyway.  *Id.* at ¶ 27; *see also Hill v. Michelin N. Am., Inc.*, 252 F.3d 307, 314–15 (4th Cir. 2001) (holding defendant presented sufficient evidence to show that it would have terminated plaintiff without regard to his military service because, "[plaintiff] did not present any evidence from which it could be inferred that [defendant] does not terminate all employees who are determined to have intentionally falsified their time cards, nor did he present any evidence from which it could be inferred that [defendant] did not really believe

---

[11] *See e.g.*, Ex. 10, Bird Decl. ¶ 22 (showing no one by the name of Stephanie worked at Cornerstone Rehab, despite Suarez's statement that he spoke with Stephanie during alleged visit; showing Darlene had never met with a UPS representative even though Suarez recorded speaking with Darlene; showing neither Cindy nor Leslie from Avallone had met with Jesse, despite Suarez's recording two in-person visits to that location in August and Bird's knowledge that Avallone is a two-person shop).

that [plaintiff's discrepancy] was intentional."); *Hance v. BNSF Ry. Co.*, 645 F. App'x 356, 365–66 (6th Cir. 2016) ("We express no opinion as to whether [plaintiff] intended to deceive [defendant]; that is not relevant to our evaluation of [defendant's] affirmative defense.  Because we are satisfied that [defendant]'s belief that [plaintiff] was dishonest, standing alone, would have induced [defendant] to not offer him the Conductor Trainee position, [plaintiff]'s USERRA retaliation claim against [defendant] fails.").

**B.    DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM**

Though Suarez's First Amended Complaint does not use the terms "hostile work environment," he complains of unspecified "harassment" and alleges that he was subjected to "disparate and discriminatory terms and conditions of employment."   Dkt. No. 16, § V.  To the extent Suarez attempts to state a claim for hostile work environment under USERRA, however, he fails to do so, both because it is unclear whether such a claim existed at the time of Suarez's termination and, even if it did, Suarez does not have any evidence supporting his claim.

**1.    Suarez Fails to Show that a Hostile Work Environment Claim under USERRA Existed At the Time of His Termination**

In its only decision addressing this issue, the Fifth Circuit held that a hostile work environment claim is not cognizable under USERRA.  *See Carder v. Cont'l Airlines, Inc.*, 636 F.3d 172, 178 (5th Cir. 2011) ("[B]ased on the distinct text of USERRA, its legislative history, and its policies and purposes, we decline to infer a cause of action for hostile work environment under USERRA.").  Although Congress did later amend the definition of "benefit of employment" as it is used in USERRA to include "the terms, conditions, or privileges of employment," the Fifth Circuit has not yet interpreted the effect of this amendment on its prior ruling.  Furthermore, even if this amendment were to allow an employee to state a hostile work environment claim under

USERRA going forward, because the amendment did not go into effect until November 21, 2011—nearly two months after Suarez's termination—it does not apply to Suarez retroactively. Pub. L. No. 112-56, 125 Stat. 711; 38 U.S.C. § 4303(2); *see Greene v. United States*, 376 U.S. 149, 160 (1964) ("the first rule of construction is that legislation must be considered as addressed to the future, not to the past"). Thus, Suarez is barred from raising a hostile work environment claim under USERRA against UPS.

### 2. Even if Cognizable, Suarez Fails to Demonstrate He Was Subjected to a Hostile Work Environment

Moreover, even if a hostile work environment claim were cognizable under USERRA and applied retroactively to Suarez's case, Suarez fails to demonstrate the existence of a genuine issue of material fact that he was subjected to a hostile work environment. "Where a harassment claim arises out of a supervisor's conduct, there are four elements of a hostile working environment claim: (1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome [] harassment; (3) that the harassment was based on [a protected characteristic]; and (4) that the harassment affected a 'term, condition, or privilege' of employment." *E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 453 (5th Cir. 2013). In analyzing whether these factors have been met, the United States Supreme Court has clarified that "[the] standards for judging hostility are . . . demanding to ensure that [federal employment statutes] do[] not become a general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Thus, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Id.* Rather, "to be actionable . . . a [hostile work] environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive." *Id.*, at 787-88 ("We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment . . . ."). In other

words, federal employment law "is not [intended to be] a shield against harsh treatment at the workplace . . . only in instances of harshness disparately distributed."  *Reine v. Honeywell Int'l Inc.*, 362 F. App'x 395, 397 (5th Cir. 2010).

In this case, the only military-specific harassment Suarez cites are (1) Ransonette's alleged statement concerning Suarez's competitors "cannibalizing" his territory during his military absence; and (2) Bird's email, in which she referred to Suarez's military leave as 'voluntary' and reminded Suarez that he needed to focus on his territory when he returned.  To the extent either of these communications constitute harassment at all, they do not rise to the level of objectively offensive, severe, abusive, and/or extreme conduct necessary to create a genuine issue of material fact on a hostile work environment claim.  Rather, such incidents clearly fall in the category of "offhand comments" and "isolated incidents," which the Supreme Court has stipulated "will not amount to discriminatory changes in the 'terms and conditions of employment." *Faragher* , 524 U.S. at 788.  Indeed, Suarez himself testified that when he complained of Ransonette's alleged comment, Ewell stated she would take care of it and, in fact, Ransonette never made any further comments about Suarez's military service.  Ex. 6, Suarez Dep. 107:11-108:14.  Likewise, Bird's email also informed Suarez that she was allowing him to take two weeks of unaccrued vacation time during his military training, even though neither USERRA nor UPS policies required her to do so.  Ex. 24, April 19, 2011 Em frm Bird to Suarez.  Thus, UPS maintains that neither of these incidents rise to the level of harassment, and even if they did, any alleged harassment Suarez claims to have experienced is not severe or pervasive enough to support a hostile work environment claim.

To the extent Suarez claims the harassment he experienced manifested in the form of unwarranted reprimands, heightened scrutiny of his performance, unnecessary and burdensome reporting, such conduct does not support a claim for hostile work environment because it is not

directed in any way toward his military service. *Jones v. Dallas Cty.*, 47 F. Supp. 3d 469, 483 (N.D. Tex. 2014) ("Plaintiffs must demonstrate a "connection between the allegedly harassing incidents and [their] protected status."). Suarez has no evidence that other non-military employees with similar performance-related issues were treated differently.  Indeed, Bird requires all non-military employees to provide daily documentation of their activities when suspected of falsifying their records and she has, likewise, terminated all employees whom she has discovered falsified their documentation.  Ex. 10, Bird Decl. ¶¶ 16, 27.  Furthermore, Bird has supervised other reservists without concern over their integrity and documentation.  *Id.* at ¶ 26.  Thus, such treatment is not evidence of harassment related to Suarez's military service, but rather the way Bird treats all employees suspected of falsifying records.  *Id.*; *Smith v. Home Depot U.S.A., Inc.*, 102 F. Supp. 3d 867, 883 (E.D. La. 2015), *appeal dismissed* (July 20, 2015) (finding plaintiff failed to meet her burden as it related to her claim for hostile work environment where she could not show how her being forced to work the late shift on occasion and being berated in front of her peers was "connected to, based on, or related to her race, gender, or age").

## IV.   CONCLUSION AND PRAYER FOR RELIEF

As set forth above, Suarez's USERRA claims are entirely without merit.  There is no evidence to show that Suarez's military service was a motivating factor in UPS's decision to terminate his employment.  Furthermore, even if Suarez were able to meet that initial burden, the evidence shows that UPS reasonably believed he falsified his TEAMS and ORACLE reports, and would have terminated his employment on that basis alone.  Finally, Suarez's cannot bring a claim of hostile work environment against UPS and, even if he could, he fails to meet his burden of showing that he was harassed on the basis of his military and that such harassment was severe and pervasive enough to change the terms and conditions of his employment.  Accordingly, for all of

the reasons stated therein, summary judgement against Suarez should be entered on all of his

claims, and UPS prays for all other relief to which it is justly entitled.

Respectfully submitted,

/s/ Shannon B. Schmoyer
Shannon B. Schmoyer
Texas Bar No. 17780250
Christine E. Reinhard
Texas Bar No. 24013389
Jane Ann Fosson
Texas Bar No. 24093444
SCHMOYER REINHARD LLP
17806 IH 10 West
Suite 400
San Antonio, Texas 78257
PH:  (210) 447-8033
FX:  (210) 447-8036
sschmoyer@sr-llp.com
creinhard@sr-llp.com
jfosson@sr-llp.com

**ATTORNEYS FOR DEFENDANT
UNITED PARCEL SERVICE, INC (OHIO)**

19

## <u>CERTIFICATE OF SERVICE</u>

On November 7, 2016, a true and correct copy of this document was filed electronically. Notice of the filing was served by operation of the Court's electronic filing system (ECF) on the following counsel of record:

Mark Anthony Sanchez, Esq.
Albert Escobedo Tovar, Esq.
SANCHEZ & WILSON, P.L.L.C.
6243 IH-10 West, Suite 1025
San Antonio, Texas 78201-2020
Telephone: (210) 222-8899
Facsimile: (210) 222-9526
mas@sanchezwilson.com
aet@sanchezwilson.com


/s/ Shannon B. Schmoyer
Shannon B. Schmoyer